UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON

Eastern District of Kentucky
**FILED**

APR 1 8 2005

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

SHERRI WHITE,                          )
                                       )
            Plaintiff,                 )        Civil Action No. 04-53-KSF
                                       )
V.                                     )
                                       )
L-3 COMMUNICATIONS INTEGRATED )         **MEMORANDUM OPINION**
SYSTEMS LIMITED PARTNERSHIP,  )               **AND ORDER**
                                       )
            Defendant.                 )

*** *** ***

This matter is before the Court for consideration of Defendant L-3 Communications

Integrated Systems' (hereafter "L-3 Communications") Motion for Summary Judgment. [DE # 31]

The Plaintiff has responded [DE #46] and the Defendant replied [DE #50]. The matter is fully

briefed and now ripe for review. For the reasons set forth in this Memorandum Opinion and Order,

the Defendant's motion will be granted.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

White initiated the instant action on August 29, 2003, in Madison Circuit Court. [See DE #1.]

This action was removed to this Court on February 5, 2004. [DE #1] White was thereafter given

leave to amend her complaint on November 16, 2004. [DE ##18-19] Through her most-recent

Amended Complaint [DE #19], White alleges claims for third party beneficiary of contract {Count

I), breach of contract (Count II), breach of implied covenant of good faith and fair dealing (Count

III), wrongful discharge (Count IV), retaliation in violation of KRS Chapter 344 (Count V), sexual

discrimination in violation of KRS Chapter 344 (Count VI), and the tort of outrage (Count VII). On

December 21, 2004, this Court stayed Counts IV and V and referred them to arbitration, pursuant

1

to the ADR policy contained in L-3 Communications' employee policy. [DE #29] On February 3, 2005, the Defendant filed the instant motion, seeking summary judgment on Count I, II, III, VI, and VII. [DE #31]

The other facts underlying this action have been adequately set forth in the record and need not be repeated herein.

## II.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Patton v. Bearden, 8 F.3d 343, 346 (6th Cir.1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir.1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. Id. at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there

2

must be evidence on which the jury could reasonably find for the [nonmoving party]." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id.</u> at 249-50 (citations omitted).

## III.   DISCUSSION

### A.   <u>White Was Not A Party To Or Third Party Beneficiary Of Any Contract</u>.

In Counts I and II, White asserts claims for third party beneficiary of contract and breach of contract. White contends that the issue presented is "whether the written policies and directives of L-3 created a contract arrangement with the Plaintiff that L-3 must adhere to in determination of job transfers." [DE # , pp. 16-17]

Kentucky law recognizes that relations between employers and employees are generally terminable at the will of either party. <u>Firestone Textile Co. Div. v. Meadows</u>, 666 S.W.2d 730 (Ky.1984).

> As a general rule, an action for the breach of a contract can only be brought by one who is a party thereto. However, there is a well-recognized exception to this rule under which a third party for whose benefit a contract is made may maintain an action against the obligor, if it be made to appear that, when the contract was made, some obligation or duty was owing from the promisee in the contract to the third party for whose benefit it was made.

<u>Rhymer v. Federal Life Ins. Co.</u>, 13 F.Supp. 181, 183 (E.D.Ky. 1936), <u>aff'd</u> 95 F.2d 999 *6th Cir. 1938) (citing <u>Fidelity & Casualty Co. of New York v. Martin</u>, 173 S.W. 307 (Ky. 1915); and <u>Hendrix Mill & Lumber Co. v. Meador</u>, 16 S.W.2d 482 (Ky. 1929).

Here, White does not point to any express contract. Rather, she alleges that L-3 Communication's contract with the United States requiring it to comply with ISO-9000 created contractual obligations to her as a third party beneficiary. First, the only parties to the contract at issue are the Defendant and the United States. White is not and has never been a party to that

3

contract. She alleges that this contract requires L-3 to adopt and adhere to certain policies and procedures with its employees. This is a false characterization of that contract. Although White claims that the "written policies require the candidate scoring the highest be offered the position," White has not introduced any documentation supporting this claim. On the other hand, L-3 Communications demonstrated that the contract requires L-3, through its ISO-9000 implementation, to merely ensure that competent and qualified people are hired. Thus, the Court finds that there is no employment contract between White and L-3 and that she was merely an at-will employee. Rhymer, at 183.

White also contends that an implied contract was formed and cites a number of cases holding that certain documents may create an implied contract of employment. In support of this, White posits that the policies and directives of L-3 regarding determination of job transfers is sufficient to create such an implied contract. The Court does not agree. The express language contained in the policy and procedure manual expressly states that it does not form any employment contract. Further the cases cited by White are not applicable, as the manual does not set forth her annual salary or describe how long her position will last.

White also argues that she was the third-party beneficiary of the contract between L-3 and the United States, again pointing to the policies and procedures required of L-3 in order to be ISO-9000 compliant. In Kentucky,

> It is well established that a third person may, in his own right and name, enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration. But, [n]ot every contract will give one who is not privy thereto a right of action therein, even though such third party might have received a benefit from the completion of the contract. Only a third-party who was intended by the parties to benefit from the contract, namely, a donee or a creditor beneficiary, has standing to sue on a contract; an incidental beneficiary does not acquire such right.

Presnell Const. Managers, Inc. v. EH Const., LLC, 134 S.W.3d 575, 579 (Ky. 2004) (citations and

4

internal quotations omitted). All of White's arguments hinge on one allegation - that ISO-9000 and L-3 Communication's employee policy manual require the candidate scoring the highest be offered the position. This is simply inaccurate and White has not directed the Court to any specific provision stating this. Basically, her claim amounts to one that Brown was hired because of "favoritism", not because of the breach of any contract. She had not produced any evidence indicating that she was "intended to benefit from the contract" between L-3 and the United States. Id.

### B.   White's Breach Of Implied Covenant Of Good Faith And Fair Dealing Is Not Supported By Kentucky Law In The Employment Context.

Next, White claims that L-3 Communications somehow breached an implied covenant of good faith and fair dealings because she was allegedly treated unfairly in regards to her internal transfer request. [Count III]

In McCart v. Brown-Forman Corp., 713 F.Supp. 981 (W.D.Ky. 1988), the plaintiff, similarly to White herein, alleged breach of an implied duty of good faith and fair dealing against his employer for its termination of his employment.  In denying this claim, this Court's companion jurisdiction held:

> A similar claim was advanced in Grzyb v. Evans, supra, and dismissed without comment by that Court. We are cited to no Kentucky case recognizing such a cause of action and as the Court said in Scroghan v. Kraftco, supra: "We are not convinced that this is a proper area for the exercise of judicial activism." 551 S.W.2d at 812. Put another way, the creation of new theories of tort liability rests with the Supreme Court of Kentucky and the Kentucky General Assembly.

McCart, at 983. Here, White alleges a similar claim, and yet, this claim does not even rest upon any termination of employment. She has not cited any other cases supporting her contention that this tort has been or should be extended to the employment context. In light of this, the Court holds that this tort does not extend to the employment context and, therefore, this claim is without merit. Like the allegation in McCart, this Count will be dismissed here as well.

**C.**   **White's Outrage Claim Is Subsumed By Her Discrimination Claim.**

Kentucky recognized the tort of outrage in <u>Craft v. Rice</u>, 671 S.W.2d 247 (1984), where the

court stated the criteria to establish a claim for outrage as:

1.     the wrongdoer's conduct must be intentional or reckless;
2.     the conduct must be accepted as outrageous and intolerable in that it offends
   against the generally accepted standards of decency and morality;
3.     there must be a causal connection between the wrongdoers conduct and the
   emotional distress; and
4.     the emotional distress must be severe.

<u>Id</u>. at 249.   However, even where the defendant's conduct shows a lack of compassion, taste, and

sensitivity, but there are no intentional actions going beyond all bounds of decency, there can be no

recovery.   <u>Humana of Kentucky, Inc. v. Seitz</u>, 796 S.W.2d 1 (Ky.1989). Further, "[c]itizens in our

society are expected to withstand petty insults, unkind words and minor indignities. Such irritations

are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and

intolerable conduct which is covered by this tort." <u>Kroger Co. v. Willgruber</u>, 920 S.W.2d 61 (Ky.

1996).

This tort has only been extended to the employment context by Kentucky courts in limited

circumstances. For example, in <u>Kroger Co. v. Willgruber</u>, 920 S.W.2d 61, Kroger engaged in a

calculated attempt to get Willgruber to sign release papers exonerating Kroger for its  discharge of

Willgruber. In order to induce him to sign the release, Kroger repeatedly misrepresented to

Willgruber that he would be eligible for the position of assistant sales manager at another plant

location, knowing full well that no such position was available.  Nevertheless, Kroger proceeded to

send Willgruber to Anderson, South Carolina, fully cognizant that no job would materialize. After

Willgruber returned home, he suffered a complete mental breakdown. Mrs. Willgruber brought this

to Kroger's attention and a manager for Kroger then pressured her to ger Willgruber to sign the

release. The Kroger manager then telephoned the Anderson, South Carolina, location and falsely stated that Willgruber had no interest in the job. As a result, Willgruber experienced disabling depression. Based on these facts, the Court held that the trial court correctly submitted the issue to the jury. Id. at 66.

In Wilson v. Lowe's Home Center, 75 S.W.3d 229 (Ky. 2001), Wilson alleged that he was subjected to racist remarks virtually every day during his employment with Lowe's. Id. at 237. Wilson testified that racial comments were made almost every day by the three individual store managers and by other employees in his presence. He further testified that he complained to his superiors about the comments but that no action was taken to stop them. Id. at 238. The Court concluded that Wilson had alleged sufficient facts regarding his intentional infliction of emotional distress (IIED) claim to survive Lowe's summary judgment motion. If Wilson's allegations were true, then he was subjected to racial remarks on nearly a daily basis by his coworkers and supervisors for a period of approximately seven years. Such conduct could be found by a jury be intentional, outrageous, and intolerable. Id. C.f. Stringer v. Wal-Mart Stores, Inc., 151 S.W.3d 781 (Ky. 2004) (At-will employees' allegations that supervisor manufactured an excuse to fire employees in order to save his own job fell short of the extreme and outrageous conduct necessary to support a claim for IIED/outrage. Employer could terminate at-will employees at any time for good cause, for no cause, or for a cause that some might view as morally indefensible.)

However, in Wilson, the Court went on to examine whether Wilson's IIED claim was subsumed by his Chapter 344 discrimination claim. The Court ultimately held that his IIED claim against Lowe's was subsumed by its KRS Chapter 344 claims, although his claim against the three managers as individuals was not so subsumed. Wilson, at 238. " 'Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is

limited to the remedy provided by the statute.' Thus, Wilson's IIED claim against Lowe's was

subsumed by his KRS Chapter 344 claims." Id. at 239 (citing Grzyb v. Evans, 700 S.W.2d 399, 401

(Ky. 1985)). See also Messick v. Toyota Motor Manufacturing, Kentucky, Inc., 45 F.Supp.2d 578,

582 (E.D.Ky.1999) (reaching same conclusion).

Based on the foregoing, this Court must reach a similar conclusion. White's claims against

all individuals have been dismissed, see DE #18 , and, as a result, her outrage claim now rests solely

against L-3 Communications. Because she has also filed a Chapter 344 discrimination claim, her

IIED claim is likewise subsumed and summary judgment in favor of L-3 Communications must be

granted. See Kroger Co. v. Buckley, 113 S.W.3d 644, 647 (Ky.Ct.App. 2003) ("Wilson is clear and

unambiguous in its holding that a KRS Chapter 344 claim preempts a common law IIED/outrageous

conduct claim.").

> **D.    White Has Not Come Forth With Sufficient Countervailing Evidence To Avoid Summary Judgment on Gender And Sexual Discrimination Claims Under Federal and State Law.**

Under federal law, in order to establish a claim of sex discrimination, a plaintiff must

demonstrate that (1) he is a member of a protected class; (2) he applied and was qualified for a

promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar

qualifications who were not members of the protected class received promotions. Barnes v. City of

Cincinnati, --- F.3d ---, (6th Cir.2005) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802

(1973)). In regards to Kentucky law, K.R.S. § 344.040 provides, in relevant part, that:

> It is an unlawful practice for an employer:

> (1) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, **sex**, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace

policy concerning smoking.

K.R.S. § 344.040 (emphasis added). Sexual discrimination claims brought under this statute apply the same standard as federal law. See Young v. Hammond, 139 S.W.3d 895, 903 -904 (Ky. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)) (acknowledging four-prong test for establishing a prima facie case for sex discrimination: (1) that the plaintiff was a member of a protected class, (2) that the plaintiff was qualified for the job, (3) that the plaintiff did not receive the job, and (4) that the position was filled by someone outside the protected class or remained open and the employer sought other applicants).

In support of her sexual discrimination allegations, White cites two cases from the District of Columbia, which require proof of: (1) membership in a protected class, (2) application and qualification for the job in question; (3) rejection in favor of another applicant; and (4) a sexual relationship between the employer and the accepted applicant, which was a substantial factor in the other person getting the job. See King v. Palmer, 598 F.Supp. 65 (D.C.D.C. 1984), aff'd in part and rev'd in part 778 F.2d 878 (D.C.Cir. 1985); and Broderick v. Ruder, 685 F.Supp. 1269 (D.D.C 1998).

Assuming that the Sixth Circuit would adopt a similar approach, which it has not, White has not introduced evidence sufficient to meet her prima facie burden. Specifically, she has not pointed to any deposition testimony or other records evincing any "sexual relationship", much less that any relationship (assuming she introduced some evidence that one existed) was a "substantial factor" in Brown getting the job. The only reference White makes in her brief to this is when she argues "Brown has also admitted to living with a member of management at the time the decision was made on the October job posting date." [DE # , p. 21] She has not pointed to any transcript or testimony showing any sexual relationship. She has not introduced any affidavit from any witness showing any

9

sexual impropriety, while the Defendant introduced testimony showing that no such sexual relationship ever occurred. Thus, White has failed to come forward with any countervailing evidence and this claim is also without merit. See Moore v. Phillip Morris Companies, Inc., 8 F.3d at 340-43.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, and the Court being otherwise sufficiently advised, it is hereby ORDERED that:

(1)     The Defendant's Motion for Summary Judgment [DE #31] is GRANTED;

(2)     Counts I, II, III, VI and VII of the Plaintiff's Amended Complaint [DE #19] are hereby DISMISSED with prejudice;

(3)     Because all remaining claims (Counts IV and V) have been stayed pending arbitration, this action is hereby STAYED pending resolution in the arbitration proceeding.

This __18th__ day of April, 2005.

_____
KARL S. FORESTER, CHIEF JUDGE